IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WILENE P. AIKEN, *as Administratrix of the Estate of David E. Aiken*, | Civil Action No. 19-81 |
| Plaintiff, | District Judge Cathy Bissoon |
| v. | |
| JEFFERSON COUNTY, *et al.*, | |
| Defendants. | |

# MEMORANDUM AND ORDER

## I. MEMORANDUM

On April 1, 2019, Plaintiff Wilene Aiken, ("Plaintiff"), as the administratrix of the Estate of David E. Aiken, filed an Amended Complaint (hereinafter "Amended Complaint" or "Am. Compl.," Doc. 17) against Jefferson County, Humphrey Charcoal Corporation, and John Does Nos. 1-5 (collectively, "Defendants"). On April 15th, Humphrey Charcoal Corporation ("Humphrey") filed an Answer, (hereinafter "Humphrey Answer," Doc. 18), asserting a crossclaim against Jefferson County and the John Doe Defendants. On April 22nd, Jefferson County filed a Motion to Dismiss, (hereinafter, "Motion to Dismiss Am. Compl.," Doc. 19), arguing all counts of Plaintiff's Amended Complaint asserted against it fail to state a claim. Plaintiff filed a Response in Opposition (hereinafter, "Plaintiff's Response," Doc. 22) and Jefferson County filed a Reply, (Doc. 25).

On May 6th, Jefferson County filed a Motion to Dismiss Humphrey's crossclaim (hereinafter, "Motion to Dismiss Crossclaim," Doc. 23). Humphrey opposed the Motion on May 23rd, (hereinafter "Humphrey's Response," Doc. 26.)

1

After consideration of all briefing by the parties, Jefferson County's Motion to Dismiss Plaintiff's Amended Complaint, Doc. 19, will be **DENIED** and Jefferson County's Motion to Dismiss Humphrey's Crossclaim, Doc. 23, will be **GRANTED**.

A. **BACKGROUND**

Plaintiff's son, David E. Aiken ("Mr. Aiken"), passed away on July 21, 2017, from heat exhaustion. (Am. Compl. at ¶ 5.) At that time, Mr. Aiken was a participant in a work release program, working at Humphrey while residing at Jefferson County Jail (hereinafter "Jail"). (Id. at ¶¶ 6, 8–9.) Mr. Aiken was not provided with transportation from the Jail to his placement at Humphrey. (Id. at ¶¶ 12–13.)

On the date of his death, Mr. Aiken began to suffer from heat stroke while working at Humphrey, and was permitted to sit in a room with an air conditioner to try to alleviate his symptoms. (Id. at ¶¶ 14–15.) At the close of the workday, Plaintiff states a Humphrey employee contacted the Jail to inquire about whether transportation was available to assist Mr. Aiken. (Id. at ¶ 16.) The Humphrey employee allegedly was told that he should "'Make him walk'" and no transportation would be provided to Mr. Aiken. (Id. at ¶ 18.) Mr. Aiken began to walk back to the Jail with two other adults, and when he arrived at the bottom of the hill on which the Jail sat, he passed out. (Id. at ¶¶ 20–21.) The two adults with Mr. Aiken ran ahead to alert the Jail of Mr. Aiken's condition. (Id. at ¶ 22.)

Plaintiff alleges that a "protocol" in place at the Jail required Mr. Aiken's probation officer be alerted prior to the Jail taking action to assist Mr. Aiken. (Id. at ¶¶ 23–26.) Plaintiff alleges that a message sent to Mr. Aiken's probation officer was not marked urgent, did not indicate that the situation was an emergency, and that the message was "ignored and/or

disregarded" by the probation officer.  (Id. at ¶¶ 24–25.)  Mr. Aiken ultimately was life-flighted to the hospital, but died en route.  (Id. at ¶¶ 27–28.)

B.  **ANALYSIS**

Jefferson County has moved to dismiss claims by Plaintiff and the crossclaim of its co-defendant, Humphrey.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  When faced with a motion to dismiss, a court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions."  Fowler v. UPMC Shadyside, 578 F.3d 203, 210–11 (3d Cir. 2009).

1.  **Plaintiff's Claims**

Plaintiff brings two claims pursuant to Section 1983 against Jefferson County, the municipality that runs the Jail.  (See Am. Compl. at ¶ 2.)  Plaintiff avers at Count I that Jefferson County was deliberately indifferent to Mr. Aiken's medical needs, in violation of its duties under the Fourteenth and Eighth Amendment.  (Id. at ¶¶ 37–48.)  At Count II, Plaintiff argues that Jefferson County violated Mr. Aiken's Constitutional rights through its failures to adequately train and supervise its employees to respond to medical emergencies, and that Mr. Aiken's death was a foreseeable consequence of these failures.  (Id. at ¶¶ 49–59.)  Jefferson County argues that Plaintiff fails to state a claim at either Count.

a.  Denial of Adequate Medical Care

At Count I, Plaintiff alleges that Jefferson County violated both Mr. Aiken's Eighth and Fourteenth Amendment rights by denying him access to critical medical care.  (Am. Compl. at ¶¶ 37–48.)  Mr. Aiken's status—Plaintiff alleges he was "residing" at the Jail following completing

3

of his prison sentence but "was permitted to be released from jail under a work release program in Jefferson County"—is the critical question that must be resolved to determine his rights at the time of the incident.[1] (Id. at ¶ 6). At a minimum, however, the protections he should have been afforded are determined by the United States Supreme Court's decision in Estelle v. Gamble. 429 U.S. 97, 103–04 (1976); see Natale v. Camden Cty. Corr., 318 F.3d 575, 581 (3d Cir. 2003) (stating the level of protection under the Fourteenth Amendment is "at least as great" as under the Eighth Amendment); Boring v. Kozakiewicz, 833 F.2d 468, 472 (3d. Cir. 1987) (finding it proper to apply Estelle standard to claims under both Amendments).

In Estelle, the Supreme Court concluded that "deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." 429 U.S. at 104. A violation is shown by evidence that there as "(i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need." Natale, 318 F.3d at 582. In this context, deliberate indifference requires a showing of "obduracy and wantonness, which has been likened to conduct that includes recklessness or a conscious disregard of a serious risk."

---

[1] The Court is cognizant that it must assume the truth of Plaintiff's allegations at this juncture, but notes the Amended Complaint is confusing and—maybe intentionally—vague as to the level of restraint placed on Mr. Aiken's liberty by Jefferson County at the time of his death. (Compare Am. Compl. Preliminary Statement ("[H]e was technically free to go.") with id. ("[P]rotocol demanded Mr. Aiken's probation officer be contacted before anything could be done about Mr. Aiken's condition.").) Discovery surely will aid the parties and the Court in understanding whether Jefferson County was the gatekeeper for Mr. Aiken's medical care at the time of his death, as is necessary for liability under this theory. The Court notes Plaintiff has not brought a claim for state-created danger. E.g., Kneipp v. Tedder, 95 F.3d 1199 (3d Cir. 1996). For now, consistent with the applicable standard, and the government's obligation to care for persons in its control, Mr. Aiken's "residence" at the Jail and the related allegation regarding Mr. Aiken's probation officer are sufficient at this stage to overcome Jefferson County's motion. Cf. Estelle v. Gamble, 429 U.S. 97, 103–04 (1976) ("The infliction of such unnecessary suffering is inconsistent with contemporary standards of decency as manifested in modern legislation codifying the common-law view that '(i)t is but just that the public be required to care for the prisoner, who cannot by reason of the deprivation of his liberty, care for himself.'") (alteration original) (quoting Spicer v. Williamson, 132 S.E. 291, 293 (N.C. 1926)).

4

Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999) (internal quotation and citation omitted).

Plaintiff has adequately pleaded her claim based on denial of adequate medical care. As to the first factor, it is plain that Mr. Aiken's medical need was serious. (E.g., Am. Compl. at ¶¶ 27–28, 43–44.) Next, Plaintiff's allegations as to the acts or omissions of prison officials adequately allege deliberate indifference. Specifically, Plaintiff states that upon being notified that Mr. Aiken had passed out due to heat stroke, Jail officials' only action was to send a message to Mr. Aiken's probation officer regarding his condition. (Id. at 23.) Despite that Mr. Aiken was experiencing a medical emergency, Plaintiff states that Jail officials did not convey any urgency to his probation officer, and the message was ignored. (Id. at 24–25.) Whether this amounted to delay without sufficient reason or to prevention of necessary medical care, Plaintiff sufficiently alleges that Jefferson County officials acted with deliberate indifference. Rouse, 182 F.3d at 197.

Thus, Jefferson County's Motion to Dismiss Amended Complaint will be denied as to Count I.

        b.     Failure to Train and/or Supervise

At Count II, Plaintiff brings a claim against Jefferson County for inadequate training or supervision. (Am. Compl. at ¶¶ 49–59.) To prevail under a failure-to-train theory, a plaintiff must demonstrate a direct causal link between the municipal action and the violation of rights, and must show that the municipal action was taken with "deliberate indifference to the rights of persons" the municipality serves. City of Canton v. Harris, 489 U.S. 378, 388 (1989). A showing of "deliberate indifference" here requires decisionmakers to have "actual or constructive notice that a particular omission in their training program causes [the county's]

5

employees to violate citizens' constitutional rights." Connick v. Thompson, 563 U.S. 51, 62 (2011).

Preliminarily, the Court notes that both Plaintiff and Jefferson County appear to misunderstand what is required to plead a "failure-or-inadequacy claim." While Plaintiff's operative pleading briefly references Jail "protocols" and "policies" as a source of Mr. Aiken's injuries, (Am. Compl. at ¶¶ 23, 33), in its Brief in Support of its Motion to Dismiss the Amended Complaint (hereinafter, "Brief in Support of Motion to Dismiss Am. Compl.," Doc. 20), Jefferson County focuses in large part on those statements, and argues that her pleading is insufficient because she has not pointed to a specific municipal policy or custom. (E.g., Brief in Support of Motion to Dismiss Am. Compl. at 6 ("Counties are only subject to liability 'when execution of a government's policy or custom . . . inflicts the injury.'") (quoting Monell v. Dept. of Soc. Servs., 436 U.S. 658, 694 (1978)).) Without such an allegation, Jefferson County contends there is no way it can be found liable. (Id.) Plaintiff responds in kind and states she clearly has pointed to a Constitutionally defective policy. (Plaintiff's Response at 6–8.) These arguments appear to be wide of the mark.[2]

A plaintiff may bring a claim under Section 1983 against a municipality in two ways—not one as argued by Jefferson County. First, she could put forth a "policy-and-custom claim," alleging that an unconstitutional policy or custom led to injury. Forrest, 2019 WL 2998601, at *7. Second, she may allege injury through a "failure-or-inadequacy claim" by demonstrating that a deliberate choice by the municipality not to act or to act inadequately deprived her of a

---

[2] Plaintiff's Amended Complaint brings two claims against Jefferson County, neither of which this Court understands to be a Monell policy-and-custom claim. (Am. Compl. at ¶¶ 37–48 (Count I), ¶¶ 49–59 (Count II).) A policy-and-custom claim is distinct from a failure-or-inadequacy claim, but it is possible for a plaintiff to adequately plead claims under both theories in the same suit. Forrest v. Parry, No. 16-451, 2019 WL 2998601, at *8 (3d Cir. July 10, 2019). The Court expresses no opinion as to whether Plaintiff *could* bring a Monell claim.

Constitutional right. Id. "The pleading requirements are different for failure-to-train claims because a plaintiff need not allege an unconstitutional policy." Estate of Roman v. City of Newark, 914 F.3d 789, 798 (3d Cir. 2019). Rather, in this Circuit, successfully pleading a failure-or-inadequacy claim requires showing that "(1) municipal policymakers know that employees will confront a particular situation, (2) the situation involves a difficult choice or a history of employees mishandling, and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." Forrest, 2019 WL 2998601, at *8 (citing Carter v. City of Philadelphia, 181 F.3d 339, 357 (3d Cir. 1999)).

Applying this standard to Plaintiff's allegations, the Court finds that she has adequately pleaded her failure-or-inadequacy claim at Count II. Plaintiff alleges that Jefferson County knew their staff needed to facilitate health care in response to emergency situations, including situations like that of Mr. Aiken. (E.g., Am. Compl. at ¶¶ 50, 52.) Plaintiff states that Mr. Aiken's situation "carried great risk if mishandled" and Jefferson County's failure to respond appropriately let to a deprivation of Mr. Aiken's rights. (Id. at ¶¶ 54, 56, 58.) Specifically, Plaintiff alleges that Jail staff responded to Mr. Aiken's medical emergency by sending a message to his probation officer that "was not labeled urgent" and was thus "ignored and/or disregarded." (Id. at ¶¶ 23–26.) Plaintiff argues that Jefferson County's inadequate training caused Jail staff respond inappropriately to Mr. Aiken's emergency, resulting in his death. (Id. at ¶¶ 32, 54, 58.)

In light of these allegations, Jefferson County's Motion to Dismiss Amended Complaint will be denied as to Count II.

### 2. Humphrey's Crossclaim

In its Answer, Humphrey asserts a crossclaim for contribution and/or indemnification against Jefferson County for any damages for which Humphrey may be liable to Plaintiff.[3] (Humphrey Answer at ¶¶ 77–79.) Jefferson County argues this claim should be dismissed as it cannot be a joint tortfeasor with Humphrey and there is no contractual or legal relationship that would shift liability. (Jefferson County's Brief in Support of Motion to Dismiss Humphrey Charcoal Corporation's Crossclaim, hereinafter "Brief in Support of Motion to Dismiss Crossclaim," Doc. 24 at 4–7.)

In Response, Humphrey appears to concede that "its Crossclaim against Jefferson County might fall short" of what is required under the Federal Rules of Civil Procedure. (Humphrey Response at 1). Humphrey argues the remedy for this is that it should be given leave to amend. (Id.) The Court disagrees.

First, the undersigned requires parties to meet and confer with each other prior to the filing of a motion to dismiss to discuss whether any pleading deficiencies can be remedied. ("Order on Motions to Dismiss," Doc. 3.) Attached to Jefferson County's Motion to Dismiss is a certification stating the this meet and confer occurred and no agreement could be reached as to the issues identified in the Motion. (Motion to Dismiss Crossclaim at 4.) It is curious then, that Humphrey agreed with Jefferson County that its pleading could be insufficient after Jefferson County's Motion to Dismiss was filed.[4] (Humphrey Opposition at 1.) As its Order on Motions

---

[3] Plaintiff brought claims for negligence, wrongful death, and survival against Humphrey. (See Am. Compl. at ¶¶ 60–75.)
[4] Humphrey's incautious course of action is highlighted by the fruitful meet and confer process of Plaintiff and Jefferson County, which resulted in the filing of the Amended Complaint rather than a first round of motions to dismiss. (Doc. 15.)

8

to Dismiss made clear, this Court expects the parties to meaningfully discuss and cure defects they agree upon, not to wait for Court intervention to do so.

Second, and more critically, Jefferson County is correct that, as a matter of law, it is shielded from liability by 42 Pa. C.S. § 8541 (hereinafter, the "Tort Claims Act") for all Counts for which Humphrey seeks indemnification. See Henderson v. City of Philadelphia, 2012 WL 3024033, at *2–3 (E.D. Pa. July 23, 2012) (dismissing wrongful death and survival claims with prejudice due to Tort Claims Act); Heckensweiler v. McLaughlin, 517 F. Supp. 2d 707, 719 (E.D. Pa. 2007) (same); see also Means v. City of McKeesport, 2012 WL 6552835, at *7–8 (W.D. Pa. Nov. 19, 2012) (recommending tort claims against local agency be dismissed pursuant to Tort Claims Act because tort claims do not allege "negligence within any of the [excepted categories] and, further allege[] claims predicated upon . . . intentional acts" and therefore are barred).

The Tort Claims Act is a "non-waivable, absolute defense" to tort liability.[5] McShea v. City of Philadelphia, 995 A.2d 334, 341 (Pa. 2010) (Holding "a political subdivision cannot waive tort immunity by contract."). This absolute immunity precludes Humphrey's crossclaim as to these same causes of action. See Edison Learning, Inc. v. School Dist. of Philadelphia, 56 F. Supp. 3d 674, 681 (E.D. Pa. 2014) ("'The clear intent of the Tort Claims Act was to *insulate* the government from exposure to tort liability,' regardless of who actually sought to collect those damages from the local agency.") (quoting McShea, 995 A.2d at 341); Consolidated Rail Corp. v. Shirk by Shirk, 599 A.2d 262, 265 (Pa. Commw. Ct. 1991) (finding city immune from contribution suit where no cause of action existed against city and it was immune under Tort Claims Act); see also Pachella v. Archdiocese of Philadelphia, 2017 WL 3471027, at *5 (Pa.

---

[5] Indeed, this may be why Plaintiff herself did not assert such causes of action against Jefferson County in the Amended Complaint.

Commw. Ct. Aug. 14, 2017) (noting no challenge on appeal to trial court granting summary judgment to government defendant based on Tort Claims Act as to "contribution and/or indemnification claims").

Third, and in any event, Humphrey cannot state a claim of contribution or an indemnity claim against Jefferson County. A right of contribution exists among joint tortfeasors, where "joint tortfeasors" is defined as "two or more persons jointly or severally liable in tort for the same injury to persons or property." 42 Pa. C.S. § 8322; see also id. § 8324 (establishing right of contribution). As discussed already, Jefferson County is not liable to Plaintiff under a negligence, wrongful death or survival theory—it is immune from damages. As Jefferson County cannot be a joint tortfeasor, Humphrey's contribution claim must fail.

As to any indemnification claim, under Pennsylvania law, "indemnity is available only (1) where there is an express contract to indemnify, or (2) where the party seeking indemnity is vicariously or secondarily liable for the indemnitor's acts." Allegheny General Hosp. v. Philip Morris, Inc., 228 F.3d 429, 448 (3d Cir. 2000) (internal quotation marks omitted). Humphrey has not alleged any contract exists between it and Jefferson County, let alone one that includes an indemnification provision. (See Humphrey Answer at 77–79.) Even if it had, however, such a provision likely is unenforceable. Cromo v. SSC Corapolis Operating Co., LP, 2018 WL 4376808, at *4 (W.D. Pa. Sept. 13, 2018) ("[I]n the face of the immunity provided in the [Tort Claims Act], permitting a third party's claim for indemnity based on contract to recover damages paid on account of tort liability improperly would be an end run around the [Act].") (internal quotation mark omitted). Humphrey also has failed to plead any basis under which Jefferson County would be vicariously liable for its acts, and similarly, the Court can discern none. See

Sirianni v. Nugent Bros., 506 A.2d 868, 871 (Pa. 1986) (parties with no legal relationship subject to common liability without any right of indemnity).

For these reasons, Jefferson County's Motion to Dismiss Crossclaim will be granted and Humphrey's crossclaim will be dismissed with prejudice. Heine v. Bureau Chief Division of Fire and Safety, 765 F. App'x 816, 821–22 (3d Cir. 2019) (Affirming dismissal with prejudice where there was "no reason to believe that appellants' claims could be salvaged by amendment.")

## II. ORDER

Jefferson County's Motion to Dismiss Plaintiff's Amended Complaint, (Doc. 19), is **DENIED**, and Jefferson County's Motion to Dismiss Humphrey's Crossclaim, (Doc. 23), is **GRANTED**, and Humphrey's Crossclaim is **DISMISSED WITH PREJUDICE**. Defendant Jefferson County shall answer within 14 days of this Order.

IT IS SO ORDERED.

September 13, 2019                 s\Cathy Bissoon
                                                      Cathy Bissoon
                                                      United States District Judge

cc (via ECF email notification):

All Counsel of Record